## W. K. McCLURE v. PARK E. GETTYS.

Eastern Section. May 28, 1930.

Petition for Certiorari denied by Supreme Court, October 9, 1930.

Powers & Thornburg, of Knoxville, for appellant.

Lee, Price, McDermott & Meek, of Knoxville, for appellee.

THOMPSON, J. The complainant, W. K. McClure, a real estate agent at Knoxville, instituted this suit against the defendant, Park E. Gettys, a resident of Knoxville, to recover a $1,000 commission alleged to be due on account of a sale of defendant's house and lot situated on the northeast corner of Broadway and Hill Avenue, Knoxville, to the Church Street Methodist Church. The Chancellor awarded complainant a recovery, and the defendant has appealed to this Court and has assigned errors.

The property was the Gettys' home and belonged originally to the defendant's father, who died about October, 1921. He left a will devising a two-fifths interest in it to the defendant's mother; a two-fifths interest to the defendant's sister, and a one-fifth interest to defendant. During the early part of the year 1927, defendant acquired the interest of his mother and sister. It seems that the property had a $11,000 or $11,100 mortgage on it. It seems also that prior to the time defendant acquired the interest of his mother and sister, the complainant had the property listed for sale under a 5% commission contract, and had attempted to sell it to said Church Avenue Methodist Church.

During the latter part of March, 1928, or early part of April, 1928, complainant again interested said Church or its committee in said property, and on April 10, 1928, complainant procured defendant's signature to an option and a letter. The option was as follows:

"Know all men by these presents, That in consideration of the sum of one dollar to me in hand paid by W. K. McClure, the receipt of which is hereby acknowledged, I have given and granted, and do hereby give and grant to said W. K. McClure or his assigns the right to purchase at any time within 30 days from the date hereof, upon the terms herein set forth, the property described as follows, to-wit: (we omit the description). If this option is carried out the property owner reserves the right to take out all mantels and mirrors now in the house and the iron railing around the porch, at the price of twenty-two thousand, five-hundred dollars to be paid in cash.

"And for the consideration aforesaid I hereby covenant and agree to and with said W. K. McClure and his assigns, that if he or they shall at any time within thirty days from the date hereof elect to purchase said property under this option I will make to him or them, or to any person or persons whom they may appoint or designate for that purpose, a good and sufficient warranty deed for said premises, upon compliance by said W. K. McClure or his assigns with the condition of payment above expressed.

"Witness my hand and seal this 10th day of April, 1928."

The letter which was upon the complainant's stationary was as follows:

"Knoxville, Tenn., April 10, 1928.

"Mr. W. K. McClure,
City.
Dear Sir:

"Referring to the option given you on my property at the northeast corner of Broadway and West Hill Avenue, beg to advise, that if you dispose of this property at the price of $22,500, you are authorized to deduct as your commission $1,000. Yours very truly," etc.

The complainant insists that the letter constituted a contract whereby he was to receive a commission for selling the property, and that since there was no time fixed in it, his contract lasted for a reasonable time, i. e. for several months. Defendant, on the other hand, insists that the letter was so tied up with the option as to constitute an essential part of said option, and that the authority contained in said letter to sell the property for $22,500, and retain a $1,000 commission expired with the option at the end of thirty days after April 10, 1928.

About the time complainant procured the defendant to sign the above quoted option and letter he also procured options on two other

pieces of property adjacent to defendant's property—his idea being to sell several adjoining pieces to said church. It seems that the church-house of said Church Avenue Methodist Church had burned a short time before; that said Church had bought two lots on the corner of Locust and Church Streets with the idea of building a new church house on them; that said church's building committee had then gone over into North Carolina and inspected some church properties there which were on much larger lots, and had become dissatisfied with the lots at the corner of Locust and Church Streets; and that said committee and church were contemplating an attempt to purchase several adjoining lots on West Hill Avenue in the block in which defendant's property was situated and to build the new church house on them. And it was for the purpose of selling defendant's property to said church that complainant took the option and letter from defendant—his interest in the matter, of course, being to make a commission. And as stated, he also took options from two other adjacent owners. He turned all three of said options over to the Church's said committee.

Complainant testified that on April 10, 1928, when he procured defendant's signature to the above quoted option and letter, the defendant understood full well that his object was to effect a sale to the church and to earn a commission for himself. Also, that he took the option for the purpose of turning it over to the church's committee; the church not deeming it advisable to buy any one lot unless and until it could get options on enough adjoining land to meet its requirements. Defendant, on the other hand, testified that he did not learn until the next day, i. e., April 11, 1928, that complainant intended to attempt to sell the property to the church.

After reading the testimony of both complainant and defendant and also of the witness, M. G. Thomas, the latter of whom was the chairman of the Church's committee, we are convinced that on April 10, 1928, both complainant and defendant intended that complainant should have the right to sell the property for a reasonable length of time at the price of $22,500, and to retain a $1,000 commission, and that the only object in taking the option was to turn the same over to the Church's committee as one of the necessary steps to be taken in effecting a sale to said Church.

It appears that on and from April 23, 1928, to April 28, 1928, both inclusive, the defendant was in Atlanta, Georgia where he maintained an office or travelling headquarters. On April 23, 1928, complainant in the name of W. K. McClure & Company, under which he did business, sent him a telegram as follows:

"Wire us at our expense authority to extend option on West Hill property to June tenth nineteen twenty-eight stop also give us au-

thority to sell as low as twenty thousand net to you if necessary to get sale over.''

Defendant did not answer this telegram and on April 27, 1928, complainant called and talked to him over the long distance telephone. On the next day, i. e., April 28, 1928, defendant wrote complainant a letter, addressed to W. K. McClure & Company, as follows:

''Confirming my conversation with your Mr. McClure over the phone the 27th inst., I beg to advise that I am not willing to give you any extension nor reduction in price other than as shown on the signed option you hold terminating May 10, 1928.'' Complainant immediately showed this letter to the chairman of the committee and probably turned it over to him.

Defendant testified that the telegram and the letter, which he says he wrote for the purpose of confirming his long distance telephone conversation with complainant, show that complainant had nothing but a thirty day option—not a contract to sell within a reasonable time, etc. Complainant, on the other hand, testified that he sen the telegram and called defendant over long distance in an effort to stimulate the committee in proceeding to purchase the property. He says that in the telephone conversation he discussed with defendant the advisability of defendant's consenting to lower the price and ex tend the time and that they both agreed that it would be better not to do so as such a refusal might hurry the committee into purchasing the property, etc. And as stated, he immediately showed the letter to the chairman of the committee. In our opinion the telegram and letter do not have the probative value insisted for them by defendant. If anything, we think they corroborate the complainant's contention that the contract was that he was to have the right for a reasonable length of time to sell the property and make a commission—not merely a thirty day option.

After May 10, 1928, defendant executed two options to the Church —the first a 60 day option at the price of $27,500, and the second a 30 day option at the price of $25,000. And at some time during the month of July, 1928, the church bought the property from defendant at the price of $25,500. There was no cash paid. The church assumed the mortgage and executed notes to defendant for the balance.

Complainant seems not to have had anything to do with the execution of the two above mentioned options. Nor did he participate directly in the actual sale to the church. But he was, during the period from May 10, 1928, up to the closing out of the sale, frequently talking to the members of the committee and urging them to purchase the property. We think the efforts of complainant produced the

purchaser, etc., and that the complainant was, under his contract with the defendant, entitled to the commission.

Defendant's counsel has filed an unusually able brief and has dealt with the evidence in detail, but after examining the record, we are of the opinion that the decree of the Chancellor in favor of the complainant was correct, and the same will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.